AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

**FILED**

JUL 1 8 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.
One (1) Apple iPhone Cellular Telephone )  **17MJ2422**
Serial #: F4GSHBHXHG7Q )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841, 846, 952, 960, & 963 | Distribution of a Controlled Substance, Conspiracy to Distribute a Controlled Substance, Importation of a Controlled Substance, Conspiracy to Import a Controlled Substance |

The application is based on these facts:

See attached affidavit of Homeland Security Investigation Special Agent Monique Lafontan

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Monique Lafontan, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **July 18, 2017**

_____
*Judge's signature*

City and state: San Diego, California

Hon. Andrew G. Schopler, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## PROPERTY/ITEMS TO BE SEARCHED

The items/property to be searched is described as:

**Subject Telephone**

One (1) Apple iPhone Cellular Telephone
Model Number: MN972LZ/A
Serial Number: F4GSHBHXHG7Q
IMEI Number: 359202077115052

Currently in the possession of the Seized Property Specialist, Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA 92154.

# ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of March 13, 2017 to May 4, 2017:

    a.    tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 841, 846, 952, 960, and 963.**

# UNITED STATES DISTRICT COURT

## <u>SOUTHERN DISTRICT OF CALIFORNIA</u>

IN THE MATTER OF THE SEARCH OF:          Case Number:

| | |
|---|---|
| One Apple iPhone | ) AFFIDAVIT OF SPECIAL |
| Cellular Telephone | ) AGENT MONIQUE LAFONTAN |
| Model #: MN972LZ/A | ) IN SUPPORT OF SEARCH |
| Serial #: F4GSHBHXHG7Q | ) WARRANT |
| <u>IMEI #: 359202077115052</u> | ) |

## <u>AFFIDAVIT</u>

I, Monique Lafontan, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## <u>INTRODUCTION</u>

1.     I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Special Agents of the Department of Homeland Security, Homeland Security Investigations, for the following target property: one cellular telephone seized on May 4, 2017, from Sheila Olivia ATONDO-RIVERA, at the Tecate, CA Port of Entry.  The cellular telephone is as follows: (1) One iPhone Cellular Phone, Model Number MN972LZ/A,     Serial     Number     F4GSHBHXHG7Q,     IMEI     Number 359202077115052 ("Subject Telephone").

2.     The Subject Telephone was seized from ATONDO-Rivera, when Customs and Border Protection Officers ("CBPOs") encountered ATONDO-Rivera at the Tecate, California Port of Entry on May 4, 2017.  Upon inspection of the 2009 Dodge Caliber ATONDO-Rivera was driving, a CBPO discovered sixty-

three (63) packages of methamphetamine, totaling approximately 64.86 kilograms (142.69 pounds), concealed within a special, non-factory compartment in the floor of the vehicle. It is believed that the Subject Telephone was used by ATONDO-Rivera to communicate with co-conspirators during the drug smuggling event. She has been charged with importation of a controlled substance (methamphetamine) in the Southern District of California. Probable cause exists to believe that the Subject Telephone contain evidence relating to violations of Title 21, United States Code Sections 841, 846, 952, 960, and 963. The specified telephone is currently in HSI possession at 2255 Niels Bohr Court, San Diego, CA 92154. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

3.     Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the item to be searched as described in Attachment A (incorporated herein). These items may be or lead to evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 841, 846, 952, 960, and 963.

## EXPERIENCE AND TRAINING

4.     I am a Special Agent and currently employed with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have held my current position with HSI since September 2015. I am a graduate of the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training Program at the Federal Law Enforcement Training Center (FLETC). During the course of my training at FLETC, I learned fundamentals of how to

2

conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence--all in relation to violations of the United States Code.

5.      I was also previously employed for 8 years with the DHS, United States Citizenship and Immigration Services (USCIS) as an Immigration (Adjudications) Officer within the Agency's Service Center Operations and Field Operations Directorates in Southern California, and as an Immigration Officer within the Fraud Detection and National Security Directorate, Immigrant Investor Program, in Washington D.C.  During my time with USCIS, I gained extensive experience and specialization in the investigations of immigration benefits, to include, but not limited to: interviewing techniques, evidence analysis, legal decision writing, and benefits adjudications.  I primarily specialized and gained expertise in the areas of detection and deterrence of immigration fraud.  This experience has further prepared me for my position as Special Agent with HSI.

6.      As a Special Agent with HSI, my duties include investigating narcotics-related violations of Title 21 of the United States Code and the California Health and Safety Code. I have participated in and conducted investigations of violations of various State and Federal criminal laws, including distribution of controlled substances, use of a communication facilities to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code and various California Health and Safety Code and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and methamphetamine, and the discovery of individuals who have laundered proceeds emanating from those

3

illegal activities.  Also, these investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs.  Through these investigations and training, I am familiar with the operations of illegal international Drug Trafficking Organizations (DTO) in various parts of the world, including Mexico.

7.      Based on my experience, I am familiar with the methods utilized in narcotics-trafficking operations and the trafficking patterns employed by narcotics organizations.  I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews.  I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking.  I have become familiar with the methods of operation typically used by narcotics traffickers.  I know that narcotics traffickers often require the use of one or more telephone facilities to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances.  Based on my training and experience, I know that load drivers smuggling controlled substances across the border are often in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Moreover, I know that professional narcotics operations depend upon maintaining their extensive contacts.   The use of telephones is essential in maintaining timely long-distance and local contacts with the original suppliers and those down the organizational chain to the local traffickers.   The telephone enables narcotics dealers to maintain contact with narcotics associates, narcotics suppliers, and narcotics customers.  I also know that narcotics traffickers often use fraudulent information to subscribe to

communication facilities, especially cellular telephones, and frequently change communications facilities to thwart law enforcement efforts to intercept their communications.

8.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them.   Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9.     Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.     Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.     Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.     Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.     Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.     Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

5

f.   Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

10.   Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.   tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation methamphetamine or some other controlled substance from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other controlled substance from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

6

e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.   On May 4, 2017, at approximately 3:16 p.m., ATONDO-Rivera applied for entry from Mexico into the United States via the Tecate, California Port of Entry. ATONDO-Rivera was the driver, sole occupant and registered owner of the 2009 Dodge Caliber bearing Baja California, Mexico license plates ("the vehicle").

12.   In primary inspection, ATONDO-Rivera, a B1/B2 visa holder, gave a negative customs declaration to the Customs and Border Protection Officer ("CBPO"). ATONDO-Rivera was referred to secondary inspection for further investigation based on a computer-generated alert on the vehicle.

13.   In secondary, with ATONDO-Rivera waiting in the waiting area, CBPOs used a Buster density meter to analyze the vehicle's floor, behind the driver's seat. The meter showed an abnormally high reading for the area. A CBPO pulled up the carpet and saw that it had been glued into place. A Human and Narcotics Detector Dog ("HNDD") inspected the vehicle and alerted to the vehicle's floor. CBPOs then pried open the access panel on the floor and observed packages inside. A total of 63 packages were removed from the special compartment on the vehicle's floor. A package was probed and a sample of a crystal-like substance was obtained, which field-tested positive for methamphetamine. The 63 packages had a combined weight of 64.86 kilograms

7

(149.62 pounds).

14.     ATONDO-Rivera was arrested in violation of 21 U.S.C. §§ 952, 960, Importation of Controlled Substances.

15.     ATONDO-Rivera had the Subject Telephone in her possession at the time of arrest. Additionally, ATONDO-Rivera clarified, both before and after she waived her *Miranda* rights, that Subject Telephone was her telephone and that she used the Subject Telephone.

16.     Based upon my experience investigating narcotics smugglers and the particular facts in this case, I believe that ATONDO-Rivera likely used the Subject Telephone to coordinate the importation of methamphetamine into the United States. Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin several weeks before drugs are loaded in the car and includes coordination on crossing the border to "burn plates" (develop a crossing history or pattern). Further investigation revealed that ATONDO-Rivera began crossing the international border in the vehicle with a special compartment on April 13, 2017. ATONDO-Rivera next attempted to cross with the vehicle on May 4, 2017, which led to her arrest. Drug conspiracies require detailed and intricate planning to successfully evade detection. In my professional training, education, and experience, this requires planning and coordination in the days, weeks and often months prior to the event. Here, ATONDO-Rivera's vehicle had a sophisticated compartment which likely took additional time to plan and cover. Given this, I request permission to search the Subject Telephone for evidence dating back to March 13, 2017, up to an including through May 4, 2017.

17.     Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to

the narcotics smuggling activities of ATONDO-Rivera and her co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## SEARCH METHODOLOGY

18.   It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the

process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that ATONDO-Rivera used the Subject Telephone to facilitate the offense of importation of a controlled substance. The telephone was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.

22. Because Subject Telephone was seized, I also believe that probable cause exists to believe that evidence of illegal activity committed by ATONDO-Rivera continues to exist on the Subject Telephone.

23. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the item to be seized set forth in Attachment B (incorporated herein) is likely to be found in the property to be

10

searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Monique Lafontan
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this ___18th___ day of July, 2017.

HON. ANDREW G. SCHOPLER
United States Magistrate Judge

11